THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| REACTION WASHER COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>IDEPA, INC., and JOHANNES SCHNEEBERGER,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING [97] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING [99] PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Case No. 2:19-cv-00148-DBB<br><br>District Judge David Barlow |

Reaction Washer Co., LLC ("RWC" or "Plaintiff") brought an action against IDEPA, Inc. and Johannes Schneeberger ("Defendants") for declaratory judgment and money damages.[1] Parties cross-filed motions for summary judgment at the close of discovery.[2] Because Plaintiff's claims fail as a matter of law, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.

## BACKGROUND

In 2015, John Davis, Mike Morley, Packer Morley, and Johannes Schneeberger agreed to form a company to develop novel "reaction washer" technology.[3] They created Reaction Washer Co., LLC in May 2016, and the parties' responsibilities were documented in an operating

---

[1] *See* Amended Complaint, ECF No. 21 at 21.
[2] Defendants' Motion for Summary Judgment, ECF No. 97; Plaintiff's Motion for Partial Summary Judgment; ECF No. 99.
[3] ECF No. 99 at 1.

agreement.[4] The operating agreement provided that Spring Pointe, LLC (owned by the Morleys) would provide $250,000 for start-up costs; ME3, LLC (owned by Davis) would contribute expertise, business, goodwill, use of IP, and time; and IDEPA, Inc. (owned by Schneeberger) would contribute "patent and patent application prosecution services within the professional obligations of a US Patent Agent, use of IP, expertise, efforts and time."[5]

RWC operated smoothly until 2018, when relationships between Schneeberger and the other parties began to deteriorate in a dispute over intellectual property rights.[6] In November 2018, Schneeberger sold his interest in RWC to Mike Morley in an assignment of membership interest ("assignment agreement").[7] The assignment agreement included a release clause that unconditionally released any claims or liabilities between IDEPA and RWC related or incidental to the partnership agreement.[8] RWC filed suit in March 2019, claiming that Schneeberger had breached his fiduciary duties as a patent agent and had improperly filed several patents without assigning them to RWC.[9]

Plaintiff asserts eight claims. First, it seeks declaratory judgment that it is the rightful owner of several patents.[10] Second, it asserts that Defendants breached their fiduciary duty associated with the professional duties of a patent agent.[11] Third, it claims that Defendants breached the contract of the operating agreement.[12] Fourth, it claims Defendants committed

---

[4] *Id.*; ECF No. 99 Ex. 2.
[5] ECF No. 99 Ex. 2., at § 2.1.
[6] ECF No. 99 at 2.
[7] ECF No. 97 Ex. 4.
[8] *Id.*
[9] ECF No. 99 at 3.
[10] ECF No. 21 at 15.
[11] *Id.* at 16.
[12] *Id.* at 17.

fraud.[13] Fifth, it asserts that Defendants committed tortious interference.[14] Sixth, it claims that Defendants were unjustly enriched.[15] Seventh, it claims that Defendants committed defamation.[16] And finally, it claims that Defendants breached their fiduciary duty associated with their status as a member of RWC.[17]

The parties cross-moved for summary judgment. Defendants move for summary judgment on all claims, and Plaintiff moves for partial summary judgment with respect to its first, second, third, and eighth causes of action.[18]

## STANDARD

A court may grant summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[19] Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of any party."[20] The moving party is also entitled to summary judgment if "the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[21] Both evidence and reasonable inferences drawn from that evidence are construed in the light most favorable to the nonmovant.[22]

---

[13] *Id.* at 18.
[14] *Id.* at 19.
[15] *Id.*
[16] *Id.* at 20.
[17] *Id.*
[18] ECF No. 97 at 1; ECF No. 99 at i.
[19] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)
[22] *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999).

## DISCUSSION

**I. Summary judgment is granted for Defendants on Plaintiff's first, second, third, fourth, and eighth claims because the valid release clause in the assignment agreement bars those claims.**

Plaintiff and Defendants both move for summary judgment on Plaintiff's claims for declaratory judgment on ownership of the patents, breach of fiduciary duty as a patent agent, breach of contract, and breach of fiduciary duty as a member of the LLC.[23] Resolution of these claims, as well as Plaintiff's fourth claim for fraud, depends on the validity of a clause in the assignment agreement that released all claims between the parties related or incidental to RWC's operating agreement.[24] The release clause is enforceable and validly barred all claims between RWC, Schneeberger, and IDEPA. Thus, summary judgment is appropriate for Defendants on the first, second, third, fourth, and eighth claims.

**A. Utah state law controls the interpretation and validity of the contracts, agreements, and releases at issue in this case.**

Federal law governs the standard of practice before the United States Patent and Trademark Office ("USPTO").[25] But allegations that implicate the PTO standards of practice do not necessarily mean that federal law controls other aspects of the case—"general contract interpretation is not within the exclusive jurisdiction of the federal circuit."[26] Instead, contract interpretation is "ordinarily a question of state law."[27] In *Texas Instruments*, the court noted that the plaintiff's motion for a preliminary injunction presented an issue involving contract

---

[23] ECF No. 97 at 1; ECF No. 99 at i.
[24] ECF No. 97, Ex. 4.
[25] *Carter v. ALK Holdings, Inc.*, 605 F.3d 1319, 1324 (Fed. Cir. 2011) (citing *Sperry v. Fla. ex rel. Fla. Bar*, 373 U.S. 379, 385-86 (1963)).
[26] *Texas Instruments v. Tessara, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000).
[27] *Id.* (quoting *Volt Info Sci. Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989)); *Takeda Pharm. U.S.A., Inc. v. Mylan Pharm. Inc.*, 967, F.3d 1339, 1345 (Fed. Cir. 2020) (applying Delaware law to interpret a patent licensing agreement).

interpretation of a licensing agreement.[28] The court, in accord with a choice-of-law clause in the contract, proceeded to interpret the contract according to California state law.[29]

Plaintiff argues that federal law controls this case because the determination of Schneeberger's compliance with the ethical standards for patent agents is a necessary element of their second claim (breach of fiduciary duty).[30] Plaintiff argues that "in matters unique to patent law, the Federal Circuit applies its own law."[31] This fails to address the preliminary issues of the validity of the release clause or the interpretation of the operating agreement. Contractual interpretation simply is not a matter "unique to patent law." State law governs issues of contract validity and interpretation that arise in a case that also involves federal patent law.[32] Accordingly, Utah law applies to the interpretation of the operating agreement, the assignment agreement, and the release clause.[33]

---

[28] *Texas Instruments*, 231 F.3d at 1329.
[29] *Id.* The District of New Mexico applied a similar approach, distinguishing the federal law that controls patent-related claims from the state law that governs the interpretation of a contract that intersects with those claims. *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 2010 WL 5559750, at *6 (D.N.M 2010) ("The Court will apply Federal Circuit law in deciding whether to grant the Plaintiffs' request for a TRO and preliminary injunction. . . . When interpreting the CSA and the forum selection clause in the CSA, however, the Court will apply state law.").
[30] Plaintiff's Reply to Motion for Partial Summary Judgment, ECF No. 125 at 9.
[31] *Id.*
[32] *Texas Instruments*, 231 F.3d at 1329.
[33] The operating agreement states that it "shall be construed in accordance with, and governed by, the laws of Utah." ECF No. 97, Ex. 2, at § 12.1(c). The assignment agreement does not include a choice-of-law provision. In the absence of a choice-of-law provision Utah courts apply the Second Restatement "most significant relationship" test to determine which state "has the most significant relationship to the transaction and the parties." *One Beacon Am. Ins. Co. v. Huntsman Polymers Corp.*, 276 P.3d 1156, 1165 (Utah 2012) (quoting *Restatement (Second) of Conflict of Laws* § 188(1)–(2)). This requires the court to consider the following factors: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract, and (e) the place of incorporation and place of business of the parties. *Id.* Considering the factors above, Utah has the most significant relationship to the assignment agreement and Utah law applies. The agreement was executed in both California and Utah. ECF No. 97, Ex. 4, at 2–3. The agreement involved a transfer of money and membership interest in Reaction Washer Co., which was registered in Utah. *Id.* at 1. The agreement was executed between IDEPA, Inc. (registered in California) and Mike Morley (a resident of Utah). *Id.* at 2. The agreement was acknowledged by the CEO and Manager of RWC, both in Utah. *Id.* at 3. In sum, Utah has the most significant relationship to the transaction. Thus, Utah law applies to the assignment agreement.

B. **The release clause in the assignment agreement bars Plaintiff's first, second, third, fourth, and eighth claims because the claims are related to or incidental to RWC's operating agreement.**

Both parties agree that the resolution of these issues depends on the validity of a claim-release clause in the assignment agreement. The agreement containing the release clause was signed by John Davis and Packer Morley acting as CEO and Manager of RWC on October 30-31, 2018.[34] It was signed by Mike Morley on behalf of himself on October 31.[35] Schneeberger then signed it on behalf of IDEPA on November 1.[36] The release clause reads:

> Assignor [IDEPA], . . . the assignee [Morley] as well as the LLC [RWC], . . . hereby irrevocably and unconditionally release, acquit and forever discharge mutually each other from any and all charges, complaints, claims, and liabilities of any kind or nature whatsoever, known or unknown, suspected or unsuspected . . . which Assignor, Assignee as well as the LLC and/or its representatives at any time heretofore had or claimed to have or which Assigner, Assignee as well as the LLC and/or its representatives may have or claimed to have regarding events that have occurred as of the date of this agreement, including, without limitation, any and all claims related or in any manner incidental to the Partnership Agreement.[37]

When interpreting a contract under Utah law, the court should first look to the plain language within the four corners of the document, harmonizing the provisions of the contract so as to avoid rendering any provision meaningless.[38] The assignment agreement releases both Plaintiff and Defendants from all claims "regarding events that have occurred as of the date of the agreement, including . . . any and all claims related or in any manner incidental to the partnership agreement."[39] Defendants argue that Plaintiff's first, second, third, fourth, and eighth

---

[34] ECF No. 97, Ex. 4, at 3.
[35] *Id.* at 2.
[36] *Id.*
[37] *Id.* The text of the release and the assignment agreement refers to a "Partnership Agreement." This is unmistakably a reference to the RWC operating agreement.
[38] *Peterson & Simpson v. IHC Health Servs., Inc.*, 217 P.3d 716, 720 (Utah 2009).
[39] ECF No. 97, Ex. 4.

causes of action arose as of the date of the assignment agreement and relate or are incidental to the RWC operating agreement.[40] The court considers in turn whether each of these claims is precluded by the release clause.

Count one of the First Amended Complaint is for declaratory judgment to determine the ownership of certain patents and patent applications.[41] Defendants contend that any claims that RWC asserts regarding intellectual property involve events that occurred prior to the execution of the assignment agreement and are related or incidental to the operating agreement.[42] The operating agreement specifies that "IDEPA, INC shall contribute patent and patent application prosecution services within the professional obligations of a US Patent Agent, use of IP, expertise, efforts, and time."[43] By the plain language of the operating agreement and the assignment agreement, any disputes involving the patents and patent applications that developed over the course of Defendants' involvement with RWC are foreclosed by the release clause. This broad language encompasses the entirety of Plaintiff's first cause of action.

Plaintiff argues that the release is not applicable to the '325 patent.[44] Plaintiff contends that the assignment agreement does not include the language "related or incidental to the Operating Agreement" and instead quotes a section of the assignment agreement that releases any "obligation, responsibility, and/or liability from the respective Partnership Agreement based on which [RWC LLC] was founded."[45] But Plaintiff selectively quotes one section of the

---

[40] ECF No. 97 at 9–10.
[41] ECF No. 21, at ¶¶ 112–21. Plaintiff seeks declaratory judgment that it is the sole owner of the '325 Patent, '714 Application, and the '876, '861, '633, '269, '393, and '334 Patent Applications. *Id.* at ¶ 111.
[42] ECF No. 97 at 10.
[43] ECF No. 97, Ex. 2, § 2.1.
[44] Plaintiff's Response to Defendant's Motion for Summary Judgment, ECF No. 109 at 11.
[45] *Id.* at 12.

assignment agreement and ignores the section that immediately follows, which is the broad release clause cited above.[46] Accordingly, Plaintiff's argument fails.

Count two of the First Amended Complaint is for breach of fiduciary duty under the USPTO Rules of Professional Conduct, 37 C.F.R. § 11.108.[47] This claim also arises under the operating agreement, which specifically states that IDEPA would act as a patent agent.[48] Thus, this claim is also precluded by the release provision.

Count three of the First Amended Complaint is for breach of contract under the operating agreement.[49] This claim clearly arises out of the operating agreement and is barred by the release provision.

Count four of the First Amended Complaint is for fraud and alleges that defendants made false representations to RWC that Mr. Schneeberger had to be listed as co-inventor on future patent applications.[50] This claim also arises from the relationship of the parties based on the operating agreement because it occurred during their business relationship. Thus, the events giving rise to the claim occurred prior to the assignment agreement and the release also applies to this claim.

Finally, count eight of the First Amended Complaint is for breach of fiduciary duty based on IDEPA's status as a member of RWC.[51] This claim arises from the duties in the operating

---

[46] ECF No. 97, Ex. 4.
[47] ECF No. 21 at ¶¶ 122–28.
[48] ECF No. 97 Ex. 2, § 2.1.
[49] ECF No. 21 at ¶¶ 129–33.
[50] *Id.* at ¶¶ 134–43.
[51] *Id.* at ¶¶ 155–59.


agreement because it is specifically related to the fact that IDEPA was a member of the LLC. It is thus precluded by the release.[52]

The release clause precludes counts one, two, three, four, and eight of Plaintiff's First Amended Complaint. The broad language of the assignment agreement releases Defendants from all claims related or incidental to the partnership agreement. Each of these claims relates to or is incidental to RWC's operating agreement, and each is "regarding events that have occurred as of the date of this agreement."[53] Generally, "[w]here an affirmative defense is stated, such as a valid release, which would defeat the cause of action, it is the duty of the court to grant a judgment based thereon."[54] Thus, the release applies here to preclude the First Amended Complaint's claims one, two, three, four, and eight.

### C. The release clause is enforceable under Utah law.

Plaintiff argues that the release does not apply in this case because enforcement of the release is against public policy. Plaintiff contends that Schneeberger violated the PTO Rules of Professional Conduct in executing the assignment agreement.[55] Thus, Plaintiff contends that public policy prevents defendants from enforcing the release.[56]

"For a contract to be void on the basis of public policy, 'there must be a showing free from doubt that the contract is against public policy.'"[57] In *Ockey v. Lehmer*, the Utah Supreme Court established a two-element test for determining if a contract is void on public policy

---

[52] Patent Agent services are expressly contemplated as IDEPA's capital contribution to RWC in the operating agreement. ECF No. 97, Ex. 2, § 2.1.
[53] ECF No. 97, Ex. 4.
[54] *Horgan v. Indus. Design Corp.*, 657 P.2d 751, 753 (Utah 1982) (quoting *Ulibarri v. Christenson*, 275 P.2d 170, 171 (1954)).
[55] ECF No. 109 at 11 (alleging violations of 37 C.F.R. § 11.108).
[56] *Id.*
[57] *Ockey v. Lehmer*, 189 P.3d 51, 57 (Utah 2008) (quoting *Frailey v. McGarry*, 211 P.2d 840, 847 (Utah 1949)).

grounds— "(1) whether the law or legal precedent has declared that the type of contract at issue is 'unlawful' and 'absolutely void,' and (2) whether 'the contract harmed the public as a whole—not just an individual.'"[58] Here, the first element of the *Ockey* test is not satisfied. Contracts releasing existing legal claims between a patent agent and a client are not prohibited by any Utah state statute or legal precedent.[59]

Plaintiff claims that the release is unenforceable because the USPTO Rules of Professional Conduct can be sources of public policy, and they prohibit a patent agent from making an agreement with a former client that settles a potential claim for liability, at least not without advising the former client of the desirability of seeking independent counsel.[60] In arguing that the USPTO Rules are a source of public policy, Plaintiff primarily relies on *LK Operating, LLC v. Collection Group, LLC*,[61] a case in which the Washington Supreme Court held that a lawyer's business transaction with his client was unenforceable on public policy grounds.[62] But *LK Operating* concerned the Washington State Rules of Professional Conduct and analyzed Washington standards for contracts relating to Washington public policy.[63] Utah courts have not followed suit. Furthermore, the USPTO Rules of Professional Conduct are promulgated by the federal United States Patent and Trademark Office[64]—the USPTO Rules could not

---

[58] *Wittingham, LLC v. TNE Limited Partnership*, 469 P.3d 1035, 1043–44 (Utah 2020) (quoting *Ockey v. Lehmer*, 189 P.3d 51, 57 (Utah 2008)).
[59] ECF No. 97 at 15.
[60] Specifically, the USPTO Rules of Professional Conduct prohibit a patent agent from making "an agreement prospectively limiting the practitioner's liability to a client for malpractice unless the client is independently represented" or from settling "a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith. 37 C.F.R. § 11.108(h)(1)–(2).
[61] 331 P.3d 1147 (Wash. 2014).
[62] *Id.* at 1167.
[63] *Id.*
[64] *See* 35 U.S.C. § 2(b)(2)(D).

possibly constitute an expression of Utah state public policy or provide any basis to invalidate a contract provision governed by Utah state law. In an attempt to bolster its argument, Plaintiff points to a law review article and a smattering of cases from across the country.[65] But Plaintiff points to no Utah law or Utah expression of public policy that could void the release provision. The first element of the *Ockey* test is not satisfied because there is no Utah state law or legal precedent prohibiting the release clause. Thus, the release clause is not unenforceable on public policy grounds.

Furthermore, the release provision is not voidable because a violation of a rule of professional conduct does not give rise to a cause of action. In the context of the rules of professional conduct for attorneys, the Utah Supreme Court does not recognize a violation of the rules as "a basis for invalidating otherwise enforceable contractual provisions."[66] In *Strohm*, the Court outlined that professional conduct rules provide an avenue for professional discipline, rather than creating an avenue for civil liability or "a basis for contract tinkering."[67] Similarly, there is nothing in the USPTO Rules of Professional Conduct that indicates that the Rules are meant to create an avenue for civil liability. The Rules reference the fact that they "govern[] solely the practice of patent, trademark, and other law before the [USPTO]"[68] and that discipline for violating the rules includes "[e]xclusion from practice before the Office . . . Suspension from practice before the Office . . . Reprimand or censure; or Probation."[69] These statements suggest that the USPTO Rules, like the Utah Rules of Professional Conduct, are designed to provide an

---

[65] ECF No. 99 at 21–24.
[66] *Strohm v. Clearone Commc'ns, Inc.*, 308 P.3d 424, 442 (Utah 2013).
[67] *Id.*
[68] 37 C.F.R. § 11.1.
[69] 37 C.F.R. § 11.20(a)(1)–(4).

11

avenue for professional discipline. Schneeberger's alleged breach of fiduciary duty could expose him to professional discipline but cannot serve as a basis to void the release under Utah law.

Ultimately, the release clause is enforceable. The first element of the *Ockey* test that prevents enforcement of a contract on public policy grounds is not met here because there is no Utah state law declaring a release agreement of this sort as unlawful. Furthermore, Plaintiff points to no Utah public policy or case law that would prevent enforcement of the agreement. The release agreement that the parties agreed to in their contract is enforceable and bars Plaintiff from asserting its first, second, third, fourth, and eighth claims. Summary judgment is granted for Defendants on those claims.

## II. Summary judgment is granted for Defendants on Plaintiff's fifth claim for tortious interference because Plaintiff fails to support an essential element of the claim.

Defendants argue that Plaintiff's fifth claim for tortious interference should be dismissed because Plaintiff has not identified any evidence that Defendants falsely alleged that RWC is not a viable and trustworthy company.[70] In response, Plaintiff submitted an email from RWC's overseas business partners that implied that Schneeberger attempted to benefit from his role as partner in RWC even after leaving the company.[71] Defendants reply by asserting both that any evidence that the Plaintiff can provide is inadmissible hearsay evidence and that, in any case, the evidence fails to identify what improper means Schneeberger used to interfere with RWC's contracts.[72]

---

[70] ECF No. 97, at 12.
[71] ECF No. 109, at 13–14.
[72] Defendant's Reply to Motion for Summary Judgment, ECF No. 123, at 17–18.

To sustain an action for tortious interference (or "intentional interference with contract"), a plaintiff must prove the element of "improper means"—in other words, prove that an action was taken "contrary to a statute, regulation, common law rule, or an established standard of a trade or profession."[73] The Utah Supreme Court narrowed the actions that constitute tortious interference to only those that involve improper means because "[i]n the rough and tumble of the marketplace, competitors inevitably damage one another in the struggle for personal advantage," but "[t]he law offers no remedy for those damages—even if intentional—because they are an inevitable byproduct of competition."[74] In order to prove the element of improper means based on an alleged violation of an established industry rule or standard, the plaintiff bears the burden to "provide evidence of an *objective*, industry-wide standard."[75]

Here, Plaintiff fails to provide any evidence of a violation of statute, regulation, rule, or established industry standard. Instead, Plaintiff supplies only emails between a defendant and an overseas business partner, claiming that the communications caused RWC to lose investment opportunities.[76] Plaintiff failed to provide any evidence that Defendants used an improper means to communicate with the business partner, an essential element of tortious interference. Thus, summary judgment is appropriate in favor of Defendants on this claim.

### III. Summary judgment is granted on Plaintiff's sixth claim for unjust enrichment because Plaintiff fails to support an essential element of the claim.

Defendant argues that Plaintiff's claim of unjust enrichment should be dismissed because Plaintiff fails to identify any specific benefit it provided to Defendants and because the remedy

---

[73] *C.R. England v. Swift Transp. Co.*, 437 P.3d 343, 353 (Utah 2019).
[74] *Id.* (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 307 (Utah 1982)).
[75] *Id.* at 355 (emphasis in original).
[76] ECF No. 109, at 13-14; ECF No. 109, Ex. 13.

of unjust enrichment is not available when the relationship of the parties is governed by a contract.[77] Unjust enrichment requires that a plaintiff show: "(1) a benefit conferred . . .; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention [of the benefit] by the conferee ... under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[78] Furthermore, unjust enrichment is designed to provide an equitable remedy, and may only be invoked when "'no express contract is present' that governs the remedies available to an injured party."[79]

Defendants argue that unjust enrichment is only appropriate when there is no contractual relationship between the parties.[80] But that does not always bar a plaintiff from making an unjust enrichment claim as an alternative to a breach of contract claim—the case that Defendants cite in support of their proposition held that unjust enrichment claims "arise only when there is no legal contract."[81] Under the right fact, a party may plead an equitable unjust enrichment claim in the alternative to a contract claim.[82]

Nevertheless, Plaintiff fails to provide sufficient evidence to support its unjust enrichment claim at the summary judgment stage. To attempt to demonstrate that it conferred a benefit to Defendants, Plaintiff points to paragraph 148 of its First Amended Complaint: "Defendants are attempting to steal or otherwise co-opt Plaintiff's patent rights with the 2017 and 2018

---

[77] ECF No. 97 at 12-13.
[78] *U.S. Fidelity v. U.S. Sports Specialty*, 270 P.3d 464, 468 (Utah 2012) (quoting *Rawlings v. Rawlings*, 240 P.3d 754, 763 (Utah 2010).
[79] *Id.* ("To allow such a cause of action in the face of an enforceable contract governing the parties' rights would effectively add or modify terms for which they had not bargained.").
[80] ECF No. 97 at 12.
[81] *Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, 1016 (Utah 2015).
[82] *See TLS Grp., S.A. v. NuCloud Global, Inc.,* 2016 WL 1562910, at *2 (D. Utah 2016) ("the fact that a contract claim would preclude recovery under an equity claim does not foreclose a party's ability to plead them in the alternative.").

Anonymous Patent Applications."[83] But Plaintiff provides no other evidence as to what specific benefit *it conferred* on the defendants. Plaintiff only asserts that something valuable is at play here, not that it conferred that valuable something on the Defendants. Unjust enrichment requires not that there is something of value in question, but that one party conferred a benefit on the other party.[84] Plaintiff has presented no evidence of that here. Thus, Plaintiff failed to make a sufficient showing of evidence with respect to an essential element of unjust enrichment—summary judgment is appropriate for Defendants on this claim. Because this failure alone requires that summary judgment be entered for Defendants, the court does not analyze the other ways in which the unjust enrichment claim may be deficient.

### IV. Summary judgment is granted for Defendants on Plaintiff's seventh claim for defamation.

Defendant argues that Plaintiff cannot identify any defamatory statement that Defendants made and, therefore, that Plaintiff's seventh claim should be dismissed.[85] Plaintiff has not identified evidence of any defamatory statement and does not contest the dismissal of the defamation claim.[86] Summary judgment is granted for Defendants on this claim.

### ORDER

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is DENIED. Defendants' Motion for Summary Judgment is GRANTED.

Signed September 7, 2021.

<div style="text-align: right;">BY THE COURT</div>

---

[83] ECF No. 109 at 15 (citing First Am. Compl., at ¶ 148).
[84] *U.S. Fidelity v. U.S. Sports Specialty*, 270 P.3d 464, 468 (Utah 2012).
[85] ECF No. 97 at 13.
[86] ECF No. 109 at 15.

_____
David Barlow
United States District Judge

16